**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| JUSTIN CHAPLIN, *on behalf of himself and others similarly situated*,<br><br>      Plaintiff,<br><br>vs.<br><br>SSA COOPER, LLC,<br><br>      Defendant. | No. 2:15-cv-01076-DCN<br><br>**ORDER** |

  This matter is before the court on a motion for summary judgment filed by defendant SSA Cooper, LLC ("SSA Cooper"). For the reasons set forth below, the court denies SSA Cooper's motion in full, as it relates to summary judgment on the Fair Labor Standards Act ("FLSA") and the South Carolina Payment of Wages Act ("SCPWA") claims.

## I. BACKGROUND

  Justin Chaplin ("Chaplin") was formerly employed as a "stevedore"[1] by SSA Cooper, a stevedoring company responsible for the loading and unloading of cargo ships at the Port of Charleston. At the Port of Charleston, the SSA Cooper stevedores work alongside International Longshoremen's Association ("ILA") union members who are organized in "gangs." Each stevedore is responsible for overseeing the work of a loading

---

[1] A "stevedore" is a person or company engaged in the loading or unloading of ships. Webster's College Dictionary (2010). During the hearing and in its briefing, SSA Cooper referred to plaintiffs by their job title of "Superintendent." The terms "stevedore" and "superintendent" are used interchangeably by the parties, and both terms refer to the jobs the plaintiffs held. The class is defined in plaintiffs' briefing as "stevedores employed by SSA Cooper in South Carolina," so the court refers to plaintiffs as "stevedores" instead of "superintendents."

1

gang of fifteen ILA workers, a lashing gang of seven ILA workers, or a gang of seven ILA truck drivers. SSA Cooper is bound by the grievance procedure for disciplining union members set forth in the ILA's collective bargaining agreement.

On March 5, 2015, Chaplin filed the present action against SSA Cooper on behalf of himself and "all other similarly situated individuals" ("plaintiffs") for overtime compensation and unpaid wages.[2] Plaintiffs allege that SSA Cooper violated the FLSA, 29 U.S.C. §§ 201, et seq. by failing to pay overtime compensation as required under the statute, as well as under the SCPWA, S.C. Code Ann. §§ 41-10-10, et seq. by failing to pay "non-discretionary bonuses" as required by SSA Cooper's employment contracts and employee compensation plan.

On October 27, 2016, SSA Cooper filed a motion for summary judgment on all of plaintiffs' claims, to which plaintiffs filed a response on December 30, 2016. SSA Cooper filed a reply on January 13, 2017. The court held a hearing on February 1, 2017. The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v.

---

[2] At certain points in this order, the court refers to individual plaintiffs by name. If not referred to be name, the court is referring to all members in the class.

2

Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III.  DISCUSSION

SSA Cooper moves for summary judgment on all of plaintiffs' claims and requests that the court dismiss the entirety of the lawsuit. Def.'s Mot. 30. SSA Cooper moves for summary judgment on the FLSA claim, arguing that plaintiffs were properly classified as executive employees and were therefore exempt from the overtime pay requirements of the FLSA. Id. at 2. It also moves for summary judgment on the SCPWA

claim, arguing that plaintiffs' deposition testimony "confirms this claim lacks a factual basis and has been abandoned." Id. The court addresses each argument in turn.

### A.     Exempt Employee under the Fair Labor Standards Act

SSA Cooper argues that plaintiffs are properly classified as executive employees, and therefore, are exempt from the protections of the FLSA. The court disagrees.

The FLSA is a statute that is "remedial and humanitarian in purpose," and reflects Congress's intent to protect broadly the "rights of those who toil." Tennessee Coal, Iron & R.R. v. Muscoda Local No. 123, 321 U.S. 590 (1944). Consistent with this remedial purpose, the statute is to be construed liberally keeping in mind that "broad coverage is essential" to accomplish the statute's goals. Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985); see Purdham v. Fairfax Cty. Sch. Bd., 637 F.3d 421, 427 (4th Cir. 2011) ("[T]he Supreme Court has cautioned that the FLSA 'must not be interpreted or applied in a narrow, grudging manner.'" (internal citation omitted)). The FLSA mandates a minimum wage for employees covered by the statute, and requires employers to pay covered employees time-and-a-half for each hour worked in excess of forty hours during any given workweek. 29 U.S.C. § 207(a)(1).

The FLSA carves out an exemption from these requirements for "[a]ny employee employed in a bona fide executive, administrative, or professional capacity," (hereafter referred to as the "executive employee exemption"). 29 U.S.C. § 213(a)(1). Due to the remedial nature of the FLSA, this executive employee exemption is to be narrowly construed. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably

within their terms and spirit."). The employer has the burden to establish by clear and convincing evidence that an employee qualifies for the executive exemption. Shockley v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993).

Courts have utilized a Department of Labor ("DOL") regulation to determine whether the executive employee exemption is applicable to a particular employee. See, e.g., Madden v. Lumber One Home Ctr., Inc., 745 F.3d 899, 903 (8th Cir. 2014). The relevant DOL regulation defines an "executive" employee as any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) ("DOL regulation"). Each of these prongs must be fulfilled for an employee to be exempt under the regulaton. The court analyzes the stevedores' status as exempt executive employees under this regulation, and finds that SSA Cooper has not established by clear and convincing evidence that the stevedores qualify for the executive exemption.

### 1.     Earns at least $455 per week

The first prong of the DOL regulation states that an exempt employee must earn at least $455 per week. SSA Cooper states that plaintiffs earned at least $40,000 per year, significantly exceeding the salary of $455 per week that an employee must receive

5

to qualify as a "bona fide executive" under 29 C.F.R. § 541.100(a)(1).  Def.'s Mot. 16.  Plaintiffs agree that this prong has been met.

### 2. Primary Duty is Management

The second prong of the DOL regulation states that an exempt employee's primary duty is "management of the enterprise in which [he is] employed or of a customarily recognized department or subdivision thereof."  29 C.F.R. § 541.100(a)(2).  An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs," "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  The DOL has listed four non-exhaustive factors to consider in determining the primary duty of an employee: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  Id.  The court finds that these factors are satisfied here even under the clear and convincing evidence standard.

SSA Cooper argues that plaintiffs managed customarily recognized departments and that their management duties were their primary duties.  Def.'s Mot. 16. Although plaintiffs attempt to minimize the importance of their managerial and supervisory duties and try to portray themselves as manual laborers, a review of the record demonstrates that stevedores were contractually prohibited from engaging in the manual work that was within the purview of the ILA workers.  When stevedores did engage in manual labor, it was relatively rare.  Plaintiff Chaplin testified that "[manual labor] wasn't primarily []

6

what we did all day, every day," although stevedores would do it "if it needed to be done." Def.'s Mot., Ex. F, Chaplin Dep. 187:9–189:2. Similarly, plaintiff Kevin Burns testified that stevedores engaged in manual labor only if something had happened on the ship, but that otherwise it was not a primary duty. Def.'s Mot. Ex. I, Burns Deposition 68:25–70:14.

The DOL regulation states that, as a rule of thumb, an employee who spends over fifty percent of his time in management has management as his primary duty. 29 C.F.R. § 541.103. This test is easily met here as there is plenty of evidence that the stevedores spend the majority of their time supervising—for example, when asked if there were any days where more than half of the time was spent doing manual labor, plaintiff Chaplin answered "no." Chaplin Dep. 114:2–8. Even for those stevedores who <u>occasionally</u> spent more than half the day engaging in manual labor, this court has held that the amount of time spent on non-management tasks is not dispositive, "particularly when non-management duties are performed simultaneous to the supervision of employees or other management tasks and other factors support a finding that the employee's primary duty is managerial." <u>Horne v. Crown Central Petroleum, Inc</u>., 775 F. Supp. 189, 190 (D.S.C. 1991).

The DOL regulation further specifies that an employee will continue to have management as his primary duty if, while engaged in nonexempt work, the employee also "supervises other employees, directs the work of warehouse and delivery men, . . . handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require." 29 C.F.R. § 541.103. Plaintiffs' testimony confirms that they spent the vast majority of their time performing the types of tasks

7

outlined in 29 C.F.R. § 541.103. For example, Plaintiff Kevin Brock testified that his "primary responsibility [] is to communicate to the truck drivers, which are [ILA workers], in letting them know where they need to go, as far as what hatch on the ship to go to, what position in the hard, what row or stack." Def.'s Mot. Ex. B, Brock Dep. 29:10–15. Similarly, plaintiff Jack E. Roumillat described his duties as "ensur[ing] that the work is flowing, the operation runs smoothly, get an hourly count to report to management, any issues that might arise in the yard . . . mainly watch the work flow, make sure the cranes are moving, and boxes are coming off and on the ship." Def.'s Mot. Ex. A, Roumillat Dep. 55:18–56:3.

In conclusion, the court finds that there is no genuine dispute over whether plaintiffs' primary duties were managerial in nature, and that they did not regularly engage in the same type of manual labor as the ILA workers they supervised.[3] But, as the court explains below in Section III.A.3, since the stevedores do not have "hiring and firing" capability it is unnecessary to determine if their primary duty is management.[4]

---

[3] Plaintiffs attempt to argue that based upon the organizational structure at SSA Cooper, management duties were actually performed by other employees and not by the stevedores. Pls.' Resp. 8. However, the existence of other higher-level managers who rank above the stevedores in SSA Cooper's organizational hierarchy does not by itself refute the court's conclusion that the plaintiffs' primary job duty is management. See Jones v. ENSR Corp., 117 F.3d 1420 (6th Cir. July 1, 2007) (finding that even though field supervisor had a supervisor, the field supervisor's primary duty was managerial). As discussed above, the court is satisfied that plaintiffs are responsible for providing day-to-day management and supervision of the ILA workers, and the organizational hierarchy of SSA management "above" the stevedores does not negate this finding.

[4] Both SSA Cooper and plaintiffs offer extensive arguments on whether the ILA gangs constitute a "department or subdivision," and if the practice of getting different ILA workers from the union hall and creating gangs that last a single shift creates a "recognized unit with a continuing function" under the FLSA. The court does not analyze this argument in depth because the record evidence illustrates that the stevedore's primary duty is management.

### 3.  Routinely Supervises at Least Two Other Employees

The third prong of the DOL regulation states that an employee must "customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). Each stevedore is responsible for overseeing the work of a loading gang of fifteen workers, a lashing gang of seven workers, or a gang of seven truck drivers. Def.'s Mot. 5. Although the number and type of gang varied, the stevedores were assigned to oversee at least one gang's work. Id. Plaintiffs offer no cognizable rebuttal argument, so the court finds that this prong is fulfilled.

### 4.  Has Authority Over Hiring or Firing

The fourth prong of the DOL regulation states that an employee must have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). SSA Cooper contends that the stevedores' authority to initiate the "knocking off" of an ILA employee fulfills this prong of the DOL regulation. Pls.' Mot. 9. "Knocking off" of an ILA worker involves sending the worker home for the day without pay. Pls.' Mot. 9. The ILA

---

Furthermore, the unique nature of the stevedoring industry combined with SSA Cooper's use of union labor makes it so that the workplace and the labor force changes daily. Courts have struggled to formulate a coherent doctrine on how to treat such a workplace. The Supreme Court recently confronted a similar issue in Christopher v. SmithKline Beecham Corp., 567 U.S. 142 (2012), where pharmaceutical sales representatives brought an FLSA action. The Court ultimately held that the sales representatives qualified as "outside salesmen," exempt from FLSA's minimum wage and maximum hours requirements. The pharmaceutical sales industry—like the stevedoring industry—is one where the business model does not involve traditional departments or subdivisions. Without making a finding on this issue, the court notes that there are sufficient parallels such that the ILA gang system constitutes a "department or subdivision." However, whether such work shifts of ILA workers are units appears to be a somewhat novel issue, especially as it fits into the primary duty test.

worker may be selected from the union hall for placement in a "gang" the following day. Having carefully reviewed the record, the court finds that the stevedores' rate of successful "knock offs" does not rise to the "hiring and firing" authority contemplated by the DOL regulation. To find otherwise would run contrary to the "remedial" intent of the FLSA.

Since SSA Cooper uses ILA workers, the collective bargaining agreement sets forth a formal process for progressive discipline, with the ILA "header,"—i.e. the ILA's designated supervisor for the gangs—as the point of contact. Def.'s Mot. 8. SSA Cooper emphasizes that the union context is important here, as the stevedores' inability to outright hire or fire an ILA worker stems from the collective bargaining agreement as opposed to SSA Cooper policies.

When considering whether an employee's suggestions are given "particular weight," the DOL regulation states that factors to be considered include, but are not limited to, "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. A review of cases where courts have found that an employee's suggestions on the hiring and firing of other employees were given particular weight within the meaning of the FLSA is instructive. In Smith v. Brennan, 115 F. Supp. 3d 691 (E.D. Va. 2015), the court found that an employee's suggestions were given particular weight where the employee had authority during a new hire's ninety-day probationary period to recommend termination or continued employment with the company, the employer relied on the employee's informal

evaluations of the new hires, and the employee was the only person that could report on the new hires' performance.  The Brennan court found it persuasive that based on the employee's input, in some cases, new hires were retained beyond the probationary periods and given modest wage increases, and in other cases, hires were terminated at the end of their probationary period.  Id. at 702.  Similarly, in Rainey v. McWane Inc., 314 F. App'x 693 (5th Cir. 2009), the Fifth Circuit affirmed the district court's finding that the suggestions of production supervisors were given "particular weight" where the production supervisors were the exclusive evaluators of provisional workers and provided recommendations on the hiring of the provisional workers as regular employees.

      Here, plaintiffs argue that it is a rare occurrence for a stevedore to make a recommendation that an ILA worker be "knocked off"—and that it is rarer still that this recommendation is followed.  Pls.' Resp. Ex. 9, Oswald Decl. ¶¶ 7, 8, 9.  The court finds guidance in Harris v. D.C., 741 F. Supp. 254 (D.D.C. 1990), where the court found that municipal supervisory housing inspectors who could recommend discipline by drafting a "letter of direction" had no authority to "hire or fire" their subordinates and were therefore not exempt under the FLSA.  Id. at 261.  In finding that the inspectors were entitled to FLSA protection, the Harris court noted that the "letter of direction" had to be approved by the inspectors' own superiors, and that those superiors ignored or rejected most suggestions of discipline.  Similarly, here, plaintiff Bryan Johnson testified that during his employment at SSA Cooper, all of his recommendations to "knock off" an ILA worker were overruled.  Pls.' Resp. Ex. 8, Johnson Dep. 55:1–25 ("I've never seen [a "knock off"] happen with any of my recommendations.").  Similarly, plaintiffs Kevin Brock and Jacques Roumillat also attempted to "knock off" an ILA worker but their

11

recommendations were not followed.[5]  Brock Dep. 63:14–65:24 (testifying that no ILA worker had ever gotten knocked off on a gang that he was working on); Roumillat Dep. 58:7–20 (Testifying that he has gone to the header "a few times" but it never resulted in a knock off).

Of course, just because the stevedores' recommendations on which ILA workers should be "knocked off" were not followed all of the time does not in and of itself mean that the stevedores do not have hiring-and-firing authority under the DOL regulation.  Cf. In re Family Dollar FLSA Litig., 998 F. Supp. 2d 440, 443 (W.D.N.C. 2014) ("While [plaintiff] may not have had the ultimate decision making authority with respect to hiring for her entire tenure, it is undisputable that she controlled the screening process and at least some of her recommendations as to hiring, promotion and termination were closely followed."); Scott v. SSP Am., Inc., 2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) (holding that store manager is exempt employee under FLSA where at least three hourly employees were promoted based on her recommendations, and she had the authority to discipline hourly employees without supervisory approval, as well as suspend employees

---

[5] Plaintiffs state that Thomas Smith, a member of the SSA management team, overrode plaintiff Kevin Brock's recommendation as lead stevedore that an ILA employee be "knocked off."  Pls.' Resp. 10.  However, while Brock did testify that he recommended that an ILA employee be knocked off because of his inexperience, a closer look at his deposition testimony demonstrates that when Brock recommended to Smith that the ILA worker be knocked off Smith said "[a]ll right, we can try it."  Although the employee was not ultimately knocked off, at no point does Brock's testimony support the assertion that Smith, as SSA Cooper management, somehow undermined or disregarded Brock's initial recommendation.  The decision to not "knock off" the ILA worker appears to instead have been made after a discussion between the header and the SSA Cooper upper management line manager.  It is entirely possible that Smith recommended the "knock off" but the header refused to enforce it.  By asserting that Smith "overrode" Brock's recommendation, plaintiffs present what is at best a misleading argument.  However, even without considering this argument, plaintiffs have presented enough testimony to call the stevedore's hiring and firing authority into question.

without approval in "extreme and dangerous circumstances"). However, the frequency with which stevedores made recommendations on personnel decisions—and the frequency with which those recommendations were followed—are relevant considerations in determining whether this prong of the DOL regulation is fulfilled. 29 C.F.R. § 541.105. SSA Cooper is able to point to only five instances of stevedores successfully initiating a "knock off" process for an ILA worker over the course of a four-year period. Pls.' Resp. 14. In Davis v. Mountaire Farms, Inc., 453 F.3d 554 (3d Cir. 2006), the court denied summary judgment on the FLSA claim, finding that where during thirty-plus years of combined service, the crew leaders at a chicken farm issued "fairly sparse" disciplinary warnings, that their "disciplinary powers and freedoms [] appear quite limited." The Davis court found that factual issues existed as to whether the crew leaders' recommendations were given "particular weight" by the owner of the chicken farms. Given that the stevedores' disciplinary authority is confined to the initiation of the "knock off" process, the rate of initiation of the "knock off" process here has parallels to the limited disciplinary powers of the chicken farm crew leaders in Mountaire Farms.[6]

---

[6] SSA Cooper relies heavily on the stevedores' job description to advance the argument that stevedores had the authority to initiate "knock offs" over the ILA workers, contending that whether or not stevedores knew about that authority or used that authority, the job description fulfills the "hiring and firing" prong of the DOL regulation. It is true that the stevedores received and signed a job description upon becoming a salaried, full-time stevedore with SSA Cooper which includes the following language on their supervisory capacity: "You have authority over all ILA personnel to include firing and initiating other disciplinary action . . . [y]ou have the authority and are expected to use independent judgment in the course of your duties as long as your decisions are not in violation of company policy or governmental regulations." Def.'s Mot. Ex. N, Signed Acknowledgments of Superintendent Job Description. However, the question of whether the FLSA's executive employee exemption applies to an employee is a fact-intensive inquiry that is based on the employee's duties in each case as opposed to a bright-line rule about particular job titles. 29 C.F.R. § 541.2 (DOL regulations stating that "[a] job title alone is insufficient to establish the exempt status of an employee."); see also Walton

FLSA exemptions are to be applied only in instances "plainly and unmistakably within the exemptions' terms and spirit." Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 692 (4th Cir. 2009) (alterations omitted) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)). The employer must show the exemption's application by "clear and convincing evidence." Id at 690. The two standards at play here present a substantial burden for SSA Cooper to overcome—the summary judgment standard instructs the court to resolve all material factual disputes in the stevdores' favor as the non-moving party, and the FLSA's "clear and convincing evidence" standard presents a formidable evidentiary burden for SSA Cooper to overcome. A review of the deposition testimony demonstrates that SSA Cooper has not met its burden of showing by clear and convincing evidence that the stevedores are FLSA-exempt executives. Specifically, there are genuine issues of material fact best left to the jury on the degree to which the stevedores' recommendations on which ILA workers should be "knocked off" were taken into account. Accordingly, the court denies SSA Cooper's motion for summary judgment on the FLSA count.

The court finds that a reasonable juror could conclude that SSA Cooper has not proven by "clear and convincing evidence" that the stevedores' recommendation on what ILA workers should be knocked off is given "particular weight" as required by the DOL

---

v. Greenbrier Ford, Inc., 370 F.3d 446, 453 (4th Cir. 2004) (explaining that to determine an employee's exempt status under the FLSA, "courts must focus on the actual activities of the employee"); Vela v. City of Houston, 276 F.3d 659, 677 (5th Cir. 2001) ("The title of 'captain' provides no guidance on whether [an] exemption applies; rather, a fact-sensitive inquiry is required." (internal quotation marks and alteration omitted)). Accordingly, the fact that the stevedores signed a job description that included language about their authority to discipline ILA workers is not conclusive as to whether this prong of the DOL regulation is fulfilled.

regulation. The court is unconvinced that the stevedores' limited authority—that they testified to using infrequently, if at all—to recommend that an ILA worker be "knocked off" rises to the level of a "recommendation as to the firing" that SSA Cooper management gives "particular weight." At the very least, there are genuine issues of material fact on the weight that SSA Cooper management gave to the stevedores' recommendations on "knocking off" ILA employees, as well as competing testimony on the stevedore's influence on the hiring and firing decisions that precludes granting SSA Cooper's motion for summary judgment. Therefore, the court denies SSA Cooper's motion for summary judgment on the FLSA count.

### B.   South Carolina Payment of Wages Act Claim

Next, the court turns to the stevedores' SCPWA claim, which arises out of SSA Cooper's alleged withholding of bonuses referred to as "meal money." Meal money is a non-discretionary bonus system wherein stevedores receive a $50 bonus when the gang that they are directing works eleven hours or more, a second $50 bonus when the gang works fifteen hours or more, and an additional $100.00 for Saturdays or Sundays. Pls.' Resp. 11. The stevedores argue that it was the General Superintendent's job to include the meal allowance bonus if the stevedore forgot to fill in that column in his time sheet, but that oftentimes the General Superintendent did not correct the mistakes on the time sheets, and this resulted in numerous instances of the stevedores not receiving meal money that they were entitled to. Pls.' Resp, 12.

As an initial matter, a review of the deposition testimony and affidavits demonstrates that there appears to be widespread confusion within upper management at SSA Cooper and between the stevedores themselves on if the meal money policy

included the hours that the gang worked as well as the guarantee time.[7]  For example, John Walsh, regional vice president of SSA Cooper, testified that the meal money policy included the hours that the gang worked and the guarantee time, but did not include the hour that the stevedore worked before the gang arrived.  Meanwhile, Paul Feri, the port manager for SSA Cooper in the Port of Charleston, testified that he understood the meal policy to be inapplicable for guarantee time because the stevedores did not actually work at that time.  Pls.' Resp. 11.  Among the stevedores, there is disagreement over whether the meal money policy was based on gang hours or actual time, and whether it included the guarantee.  Pls.' Resp. 12.  Plaintiff Johnson testified that he did not write down his meal money bonus in his timesheets because of confusion over the policy, and further that he was not informed of the number of hours needed to get the bonus.  Id.

SSA Cooper concedes that there was confusion over the meal money policy, but asks the court to grant summary judgment on the claim because even those timesheets that show that stevedores did not receive the full benefit of the meal money policy do not create a genuine issue of material fact regarding whether SSA engaged in a "pattern or practice" of unlawfully deducting time from the timesheets to avoid paying meal money bonuses.  Def.'s Reply 12–13.

During the hearing on this motion, the stevedores agreed to decertify the SCPWA claim.  Accordingly, the court rules that the class be decertified as to the SCPWA claim, but allows the claims to proceed on an individual basis.  The court denies SSA Cooper's motion for summary judgment on this count.  The stevedores have produced timesheets

---

[7] The term "guarantee time" refers to the eight hours of work per shift that ILA workers were guaranteed under the guarantee time policy.  After a meal break, ILA workers were guaranteed four hours and were paid for this time whether or not they worked the full four hours.

16

demonstrating that at least some stevedores were not paid for some of their meal money and that SSA Cooper upper management did not correct these errors, resulting in the stevedores not receiving meal money bonuses that they were entitled under the policy.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** SSA Cooper's motion for summary judgment in full.

**AND IT IS SO ORDERED**.

					_____
					**DAVID C. NORTON**
					**UNITED STATES DISTRICT JUDGE**

**June 16, 2017**
**Charleston, South Carolina**